UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

STEVEN MICHAEL PADDOCK,                 )
                                        )
                Plaintiff,              )       Case No. 1:11-cv-7
                                        )
v.                                      )       Honorable Joseph G. Scoville
                                        )
COMMISSIONER OF                         )
SOCIAL SECURITY,                        )       **OPINION**
                                        )
                Defendant.              )
_____ )

              This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking

review of a final decision of the Commissioner of Social Security denying plaintiff's claims for

disability insurance benefits (DIB) and supplemental security income benefits (SSI).  Plaintiff filed

his applications for benefits on October 20, 2009, alleging a May 30, 2009 onset of disability.[1]  (A.R.

107-19).  His claims for DIB and SSI benefits were denied on initial review.  (A.R. 56-63).  On July

13, 2010, he received a hearing before an administrative law judge (ALJ), at which he was

represented by counsel.  (A.R. 23-52).  On July 16, 2010, the ALJ issued a decision finding that

plaintiff was not disabled.  (A.R. 10-18).  On November 8, 2010, the Appeals Council denied review

(A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

_____

              [1]SSI benefits are not awarded retroactively for months prior to the application for benefits.
20 C.F.R. § 416.335;  *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also
Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004).  The earliest month in
which SSI benefits are payable is the month after the application for SSI benefits is filed.  Thus,
November 2009 is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying his claims for DIB and SSI benefits.  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment. (docket # 10).  Plaintiff argues the Commissioner's decision should be overturned on the following grounds:

1. The ALJ "did not give proper weight to the Dr. Musham, Mr. Paddock's treating physician[;]"

2. The ALJ "did not accept Dr. Fedesna's (Mr. Paddock['s] chiropractor['s]) opinion or findings[;]"

3. The ALJ "only credited the findings from Dr. Lazarra that would not support Mr. Paddock's allegations; with one exception, he did the same with a three hour exam-21 page Physical Therapist's report dated 8/21/07, submitted 2/2/10 - Exhibit 4F[;]"

4. The ALJ "did not incorporate plaintiff's pain and lack of sleep as disabling factors[;]"

5. The ALJ "neither considered Mr. Paddock's mental problems as affecting his ability to perform sedentary work nor contributing to his disability[;]" and

6. "The hypothetical questions posed to the VE did not reasonably incorporate the totality of Mr. Paddock's impairments, nor the disabilities recognized by the ALJ."

(Statement of Errors, Plf. Brief at 3, docket # 11).[2]  Upon review, the Commissioner's decision will be affirmed.

---

[2]Plaintiff argues in his reply brief (docket # 16) that the Appeals Council did not provide an adequate explanation why it declined to exercise discretionary review.  The scope of the court's review is defined by statute, and does not encompass the Appeals Council's discretionary decision whether to grant review.  *See Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001) ("No statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council decision to deny review.").

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he

-3-

Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from May 30, 2009, through the date of the ALJ's decision. Plaintiff had not engaged in substantial gainful activity on or after May 30, 2009. (A.R. 12). The ALJ found that plaintiff had the following severe impairments: "left arm pain/limitations from humeral fracture, degenerative disc disease, congenital fusion of C3-4, and left leg weakness." (A.R. 12). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 14). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform work limited to lifting 20 pounds occasionally and 10 pounds frequently; sitting for up to 6 hours and standing/walking for up to 4 hours in an 8 hour workday with normal breaks; occasional climbing of stairs, stooping, kneeling, crouching or crawling; no work over shoulder height; no forceful use of the left (non-dominant) upper extremity; and no constant pushing or pulling.

(A.R. 14). The ALJ found that plaintiff's testimony regarding his subjective limitations was not fully credible. (A.R. 14-17). Plaintiff was unable to perform his past relevant work. (A.R. 17). Plaintiff was 46-years-old as of the date of his alleged onset of disability, and 47-years-old as of the date of the ALJ's decision. Thus, at all times relevant to his claims for DIB and SSI benefits, plaintiff was classified as a younger individual. (A.R. 17). Plaintiff has at least a high-school education and is

able to communicate in English.  (A.R. 17).  The transferability of job skills was not material to a disability determination.  (A.R. 17).  The ALJ then turned to the testimony of a vocational expert (VE).  In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 27,000 jobs in the State of Michigan that the hypothetical person would be capable of performing.  (A.R. 48-49).  The ALJ found that this constituted a significant number of jobs.  Using Rule 202.21 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled.  (A.R. 18).

## 1.

Plaintiff argues that the ALJ "did not give proper weight" to the opinion of a treating physician: "Dr. Musham." (Plf. Brief at 4).  The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner.  20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).  A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician.").  Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner.  20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

-5-

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*,

SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 652 F.3d 653, 659-61 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Rabbers v. Commissioner*, 582 F.3d 647, 657 (6th Cir. 2009).

Dr. Musham was not a treating physician. It is well established that a single visit is insufficient to establish treating physician status. *See Kornecky v. Commissioner*, 167 F. App'x 496, 506 (6th Cir. 2006); *see also Torres v. Commissioner*, No. 11-3981, 2012 WL 3089334, at * 4 n.2 (6th Cir. July 31, 2012). Because Dr. Musham was not a treating physician, the ALJ was "not under any special obligation to defer to [his] opinions or to explain why he elected not to defer to [them]." *Karger v. Commissioner*, 414 F. App'x at 739, 744 (6th Cir. 2011).

The ALJ found that Dr. Musham's opinions were entitled to "slight weight" because they were not supported by objective evidence and were inconsistent with other record evidence:

> The claimant submitted the statement of "Dr. Musham," authored in February 2010 (Exhibit 13F) [A.R. 333-36]. Dr. Musham concluded that the claimant had severe functional limitations and would miss 5-10 days of work each month. There is no information about Dr. Musham's credentials or specialty. The claimant testified Dr. Musham saw him just one time. Even so, the doctor felt free to conclude that the restrictions would be in place as of August 2003 - even though the claimant's subsequent work and complaints are highly inconsistent with this conclusion. Clearly, the doctor was relying almost exclusively on the claimant's complaints and history. This opinion is given slight weight.

-7-

(A.R. 16-17).  The ALJ is responsible for weighing medical opinions, not the court.  *See Buxton*, 246 F.3d at 772-75; *see also Price v. Commissioner*, 342 F. App'x 172, 177-78 (6th Cir. 2009).  The court finds no error.

## 2.

Plaintiff argues that the ALJ committed reversible error when he found that plaintiff's chiropractor was not an "acceptable medical source."  (Plf. Brief at 6).  This argument is frivolous.  By definition, chiropractors are not "acceptable medical sources."  20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d); *see France v. Astrue*, No. 1:11-cv-184, 2012 WL 3731373, at * 9 (S.D. Ohio Aug. 28, 2012).  There is no treating chiropractor rule and the opinion of plaintiff's chiropractor was not entitled to any particular weight.  *See Walters v. Commissioner*, 127 F.3d 525, 530 (6th Cir. 1997).  Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule.  *See Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-3p (reprinted at 2006 WL 2329939, at * 1 (SSA Aug. 9, 2006)).  The opinions of a chiropractor fall within the category of information provided by "other sources."  *Id.* at * 2; *see* 20 C.F.R. §§ 404.1513(d), 416.913(d).  The social security regulations require that information from other sources be "considered."  2006 WL 2329939, at * 1, 4  (citing 20 C.F.R. §§ 404.1512, 416.912).  This is not a demanding standard.  It was easily met here.

-8-

The ALJ considered the opinions offered by plaintiff's chiropractor and found that they were not persuasive because they were not well supported by objective medical evidence:

> Arguably, the records of the chiropractor, Dr. Fedesna, are a medical opinion in support of the allegations. However, Dr. Fedesna is not an acceptable medical source (Social Security Regulation 06-03p). In addition, his conclusions – that onset of spinal pain years after an accident is quite common; that one cannot have a traumatic brain injury without significant damage to the cervical spine; that the "charts" show dizziness, lightheadedness, and headaches dating back to 2005 (Exhibit 8F/2)[A.R. 303] – are all unsupported by the rest of the evidence or are generally suspect. He also concluded in October 2009 that the degenerative changes had proceeded at an "advanced rate" (ibid, at 3), though x-rays in March 2010 only noted mild changes (Exhibit 14F/4-6)[A.R. 340-42].

(A.R. 16). The court finds no basis for disturbing the Commissioner's decision.

### 3.

Plaintiff's next argument is more readily quoted than summarized:

> ALJ Johnson only credited the findings from Dr. Lazarra that would not support Mr. Paddock's allegations; with one exception, he did the same with a three hour exam-21 page Physical Therapist's report dated 8/21/07, submitted 2/2/10 - Exhibit 4F.

(Plf. Brief at 7). This argument is barely intelligible and is supported by no legal authority other than an erroneous citation to "28 USCA § 404.1513." (Plf. Brief at 8). Issues raised in a perfunctory manner are deemed waived. *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012); *Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007).

Even assuming that plaintiff did not waive the issue, it is patently meritless. He argues that his physical therapist was an acceptable medical source and that the ALJ should have given more weight to her functional capacity evaluation. (Plf. Brief at 7-8). Physical therapists are not "acceptable medical sources." *See* 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d). A physical therapist's opinion is "other source" evidence. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d). Ms.

Patterson's opinions were not entitled to any particular weight.  *See* 20 C.F.R. §§ 404.1512, 416.912. The ALJ considered the results of her evaluation and determined that they were not entitled to significant weight because plaintiff had exaggerated the extent of his injuries and had displayed inconsistent behaviors during the evaluation.  (A.R. 16).

Plaintiff argues that the ALJ was "inconsistent" when he found that the results of some consultative examinations were entitled to more weight than others.  (Plf. Brief at 9-10).  The ALJ is responsible for weighing medical opinions, not the court.  *See Buxton*, 246 F.3d at 772-75.

## 4.

Plaintiff argues that the ALJ "did not incorporate [his] pain and lack of sleep as disabling factors."  (Plf. Brief at 11).  He disagrees with the ALJ's factual findings regarding his RFC and credibility.  (*Id.* at 11-15).  RFC is the most, not the least, a claimant can do despite his impairments.  20 C.F.R. §§ 404.1545; 416.945; *Collins v. Commissioner*, 357 F. App'x 663, 668 (6th Cir. 2009).  The ALJ found that plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms, including pain and inability to sleep and fatigue, were not fully credible.

Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ.  *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir.1987).  It is the ALJ's function to determine credibility issues.  *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).  The ALJ's credibility determination "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that

weight." *Rogers*, 486 F.3d at 248.  The court does not make its own credibility determinations.  *See Walters v. Commissioner*, 127 F.3d at 528.  The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005).  The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard.  This is a "highly deferential standard of review." *Ulman v. Commissioner*, No. 11-2304, __ F.3d __, 2012 WL 3871353, at * 5 (6th Cir. Sept. 7, 2012).  "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005).  "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476.  "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge his subjective complaints." *Buxton v. Halter*, 246 F.3d at 773.  "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *see White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009).

The ALJ carefully considered plaintiff's testimony regarding his subjective limitations and found that it was not fully credible:

> The medical evidence of record does not support these reported problems or limitations. First, the only evidence of any mental impairment was a "borderline" finding in memory, shortly after the initial injury in 2003 (Exhibit 1F/6)[A.R. 205].  Radiographic testing in later years found no evidence of ongoing brain trauma or vascular trauma in the neck.  (Exhibit

3F/27-29)[A.R. 242, 244].  No further symptoms were noted by any doctor and no treatment was provided.

The records objectively confirm a broken arm and chipped right scapula (Exhibit 1F/6)[A.R. 205].  But the treating doctor also noted in September 2004 that the claimant could lift 30-40 pounds with the affected arm (Exhibit 2F/2)[A.R. 210] and was returned to work a couple of months later (ibid).  There are radiographic studies of the spine from March 2010 that note mild degenerative changes as well as the stable congenital fusion of the C3and C4 vertebrae (Exhibit 14F/4-6)[A.R. 340-42], but no neurological impingement was noted on the MRI (Exhibit 11F/3)[A.R. 323].  Although a chiropractor, Nicholas Fedesna, found cause for the complaints of significant pain and problems (Exhibit 8F/2-3)[A.R. 303-04], no treating doctor found anything more than mild degenerative changes and some minimal left arm atrophy.  Two consultative examiners, both seeing the claimant in 2009, noted negative neurological examinations and minimal to negative musculoskeletal examinations (Exhibits 6F; 10F)[A.R. 274-80, 317-20].

This puts the basis for any functional impairment primarily on the claimant's complaints.  This is of limited reliability.  The claimant advised a physical therapist that he was pronounced dead at the scene of his 2003 accident (Exhibit 4F/13)[A.R. 260] and told the first consultative examiner he was dead on arrival at the hospital (Exhibit 6F/4)[A.R. 276].  The treatment records indicate he was unconscious for 5 minutes (Exhibit 1F)[A.R. 204].  There is no mention of a diagnosis of death.

The claimant indicated he has experienced severe problems essentially since the 2003 accident, increasing over time.  The medical evidence notes that by October 2003, he was carrying furniture (Exhibit 2F/6)[A.R. 214].  In January 2004, he had minimal pain and no swelling in the arm (ibid, at 4)[A.R. 212].  He had a subsequent fall with renewed pain, but by September 2004 he could lift 30-40 pounds and his doctor rather drily noted that in light of a lawsuit he "suspected [it would be ] quite some time before [the claimant] ever goes back to work" (id, at 2)[A.R. 210].  Even so, he release[d] claimant to work later that year (id).

There was treatment for right arm paresthesia in 2006 (Exhibit 3F)[A.R. 219-47].  The claimant was working as a welder at that time.  All testing was negative.

The next mention of back or arm problems was in 2007, when the claimant had a functional capacity assessment with a physical therapist.  In addition to describing himself as dead at the scene, the claimant characterized his injuries as having his left arm "snapped in half" (it was reduced without surgery) and his right scapula "shattered" (it was a non-displaced, tip fracture)(Exhibit 4F/16)[A.R. 263].  The physical therapist noted low lifting abilities secondary to complaints of pain (ibid, at 7)[A.R. 254], but very good grip strength (id, at 9)[A.R. 256].  The therapist also observed that the grip/upper extremity strength was not

-12-

consistent with reported problems, along with other inconsistent behaviors on evaluation (id, at 19)[A.R. 266].

The claimant asserted in November 2009 that he did not use pain medication because he was concerned over addi[c]tion (Exhibit 3E/6)[A.R.165]. This must have been a recent decision, as he had willing[ly] accepted narcotic medication at an emergency room the month before, after complaining of twisting his foot by stepping in a pothole (Exhibit 7F/9, 11)[A.R. 289, 291]. His commitment did not last long, either, as he was receiving narcotic medication by March 2010 for his back pain (Exhibit 14F)[A.R. 337-57]. In fact, he accepted a prescription for one type of narcotic while already having a prescription for another (ibid, at 8)[A.R. 344]. Two days later, he received some more (id, at 14)[A.R. 350].

The claimant alleged he sleeps 1 ½ hours a night and goes 7-9 days without any sleep (Exhibit 3E/3, 4)[A.R. 163-64]. This seems physically impossible.

As a result of these discrepancies in the record, the claimant's complaints are found credible only to the extent that they are supported by the objective medical evidence in the record.

(A.R. 15-16).

Plaintiff concedes that the level of sleep deprivation he claimed "may be physically impossible," then, without the benefit of any supporting legal authority, criticizes the ALJ for his failure to "state, what, in his opinion would be credible . . . 2 hours? 3?" (Plf. Brief at 15). Plaintiff misses the point. There is no medical evidence that plaintiff required any treatment for sleep deprivation. It was not unreasonable for the ALJ to expect extensive treatment documentation where, as here, the claimant alleges a subjective limitation which is at or exceeds the limits of human endurance. The court finds that the ALJ correctly applied the law and that his factual findings regarding plaintiff's RFC and credibility are supported by more than substantial evidence.

**5.**

Plaintiff argues that the ALJ "neither considered Mr. Paddock's mental problems as affecting his ability to perform sedentary work nor contributing to his disability." (Plf. Brief at 16).

He argues that the manner in which he answered questions during the hearing showed that he had memory problems.  (*Id.* at 16-17).  The ALJ had the opportunity to observe plaintiff's demeanor and determine whether his claims of memory problems were credible.  (A.R. 23-52).  The ALJ found that they were not credible.  Among other things, he noted: "[T]he only evidence of any mental impairment was a 'borderline' finding in memory, shortly after the initial injury in 2003. Radiographic testing in later years found no evidence of ongoing brain trauma or vascular trauma in the neck.  No further symptoms were noted by any doctor and no treatment was provided."  (A.R. 15) (citations omitted).  The ALJ did not commit error when he found that plaintiff's RFC did not include functional limitations stemming from mental impairments.

**6.**

Plaintiff argues that the hypothetical question the ALJ posed to the VE "did not reasonably incorporate the totality of Mr. Paddock's impairments, nor the disabilities recognized by the ALJ."  (Plf. Brief at 18).  This is a mere reformulation of plaintiff's unsuccessful challenge to the ALJ's credibility determination.  The ALJ found that plaintiff's subjective complaints were not fully credible.  It is well settled that a hypothetical question to a VE need not include unsubstantiated limitations.  *See Carrelli v. Commissioner*, 390 F. App'x 429, 438 (6th Cir. 2010); *Grant v. Commissioner*, 372 F. App'x 582, 585 (6th Cir. 2010) ("[I]n formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible.").  The ALJ's hypothetical question included all the limitations he found to be credible.

-14-

### Conclusion

For the reasons set forth herein, the Commissioner's decision will be affirmed.


Dated:   September 24, 2012          /s/  Joseph G. Scoville
                                     United States Magistrate Judge

-15-